Good morning, your honors. May it please the court, my name is Ashley Nicol and I'm the student attorney representing Juan Rodriguez. I'm here with my supervisor, Professor Anne Traum, and I'd like to request three minutes for rebuttal. Please try to keep track of your own time. I will, thank you. I'll keep my eye on the clock. So today I'd like to focus on why the Crawford and Brady Giglio errors require, at minimum, a new trial. Because the government prevented Rodriguez from first, impeaching the officers on the items in his truck, which were obviously important to his intent and credibility. And second, from confronting or impeaching his worst accuser, the confidential informant. Before turning to Crawford, I'd like to make three points on why the Brady Giglio errors were so prejudicial in this case. First, the government suppressed evidence from Rodriguez's truck that they knew was important to his defense. And then at trial, disputed what the photograph meant. And then without the clothing and toiletries, Rodriguez couldn't prove that the items were recovered from the vehicle. And third, there was bad faith here. As to the first point, the prosecutor told the jury in opening, and I'm on page 735 of the record here. I just want to make sure. Did the government dispute the toiletries, the bags? I mean, did they say it didn't exist, that it was wrong? I mean, was that disputed? They did. They started out in opening saying that there was no luggage in the vehicle. And specifically, that the officer, quote, didn't find any luggage in the black Toyota Tundra, end quote, or any of the other cars. And then he added, quote, the people in the red Ford Explorer, there was a man, a woman, and a child. They were pulling into Las Vegas at 8 o'clock at night, and none of them had any luggage. The defendant didn't have any luggage, and no one in the S-10 had any luggage, end quote. In other words, Rodriguez must be lying about why he was going to Las Vegas, and that proved his role. Then, as far as the actual photograph went, when showed the picture, three officers who testified said, we never saw those items that night. And that included the two officers who hand-searched his vehicle on the side of the road, as well as the lead investigator. There was pictures, I thought there was mention of toiletries. What exactly, can you tell me what you say was in the pictures? Well, the officers identified the clothing, and they also identified a black bag, which it's speculated that might be toiletries, but because we can't actually open the bag and see if there was a razor or a toothbrush in there, we don't really know the contents of that. And so the fact that that wasn't explored, simply you call that luggage, the black bag that was holding the toiletries. Those are items indicating that Rodriguez would have been tending to travel to Las Vegas, and that's exactly what the officers were looking for in this case. Lead Agent Cadigan said that he told his officers to look for, quote, anything that would lead us to believe that the defendant was prepared to spend any time in Las Vegas. How long was the truck in the possession of the police? From the record, that's not entirely clear. We know from other documents that it was about a month. You say the police suppressed the evidence. It went missing when the truck was repossessed, wasn't it? It was, and it was made unavailable to Rodriguez at trial. And because he didn't have access to those items, when the officers said, I didn't see those items, he was stuck with their answers. That's on top of the fact that the jury got to see the gun and the drugs, not pictures of them. The gun was a lot more important in this case than the clothing was, wasn't it? I don't think it was. This is a circumstantial case, and proving state of mind and intent was Rodriguez's defense. And this would have been powerful, basically a powerful counterweight to the government's circumstantial evidence against him, because it corroborated his story and it showed that he wasn't lying. This is on top of the bad faith that the government has shown here, both in the way that they handled the clothes before trial and then at trial. By knowing that these items were important, they then suppressed it from Rodriguez, made it unavailable to him, and then at trial disputed what the photograph proved. They never said that, yes, these items were recovered from that truck that night, and we didn't disclose them. And because of that, Rodriguez suffered prejudice here. We spend a significant portion of the trial trying to figure out what that photograph means, and we never get to what the clothing actually means to his defense, which is the true issue and goes to what he's trying to prove at trial to defend himself. Moreover, the suppressed Brady evidence has to be considered cumulatively with the suppressed Giglio evidence here, which related to the confidential informant. That wasn't given over, and so, therefore, these statements, I'm sorry, these items indicate that Rodriguez requires at least a new trial, if not dismissal of the indictment, because these items aren't available for him to use again on the new trial because the government suppressed them. I'd like to go ahead and move on to ‑‑ sorry. Okay, sorry. Judge McGeough, I'm just looking on the record here pertaining to your toiletry kit question. On page 45 of the record, I've got a quote where ‑‑ let's see here. I'm sorry. Rosenthal says that he didn't recover a shaving kit or toiletries from the truck, so that was denied as well. I guess my question is, you were challenging the fact that, I guess, the state or the prosecutor had said there was no luggage, and I'm just trying to figure out if you are asserting there was luggage and if we're talking about the same thing, and I think the items you're talking about are clothes and then bag containing ‑‑ that would have contained shaving items. That's correct. I think he's pretty much got everything but the suitcase, and that fact is important because it does indicate he would have been spending time in Vegas, and he wasn't lying about that. So, moving on to Crawford, if Your Honors have no more questions about Brady. Excuse me. What about the suitcase? He has everything but the suitcase. The government makes a big deal about the fact that there's no technical luggage in there, but that's ignoring the fact that what they're looking for are items to corroborate his story, and so the fact that they're in a suitcase or not isn't as important as the fact that the items were there. As far as Crawford goes, I'd like to outline why the C.S.'s statements in this case were clearly testimonial and they were plain error. The statements here are distinct from United States v. Solorio because of who's talking and why, how the statements were presented to the jury, as well as the type of prejudice that was caused. And here, as to purpose, we know that the confidential informant and Agent Guerra were there to create criminal evidence for trial. Guerra said that he had a recorder in his pocket that he was going to use to download for evidence later that was recording the statements that they made in the car. The informant's sole purpose of being there was to create evidence for trial, and this is not Solorio because we've got statements from a confidential informant to an officer, not officer-to-officer communications regarding logistics, and the two are in the vehicle trying to figure out who's involved in the conspiracy. Moreover, at trial, the statements, and here I'm talking about the statements by the informant against Rodriguez, that he was involved, that he owned the drugs, and that he protected the drugs, were offered against Rodriguez to incriminate him. This was the government's theory at trial, that he was protecting the drugs, and in the transcript, the CS says this. The admission of the transcript is the real problem here because we have admission of the entire transcript on direct as a physical exhibit before Guerra ever reads from it, and it's offered as evidence to incriminate Rodriguez. It's emphasized again on redirect when Guerra reads from it twice in terms of proving what he told Cadogan on the phone as to the issue of what he did or did not see that day, what he did or did not say, and the jury was again told in closing that the transcript was important. The prosecutor highlighted it again by saying, we read for you that section of the transcript when he was vouching for Officer Guerra on that key issue, the contested issue of what happened in the Buffalo Bills parking lot, and then on top of that, the transcript went back to the jury room. It was tabbed. The jury had it with them. They knew that it was important, and they didn't have Guerra's testimony. They had the transcript, and unlike the government asserts, this is not context or background for other statements. You don't need the CS's statements to make sense of anything that Guerra says in this case. The statement of what he told Cadogan on the phone, which was the issue on redirect, stands on its own. Moreover, it's not background because Guerra's on the stand to answer any types of questions regarding how this investigation began, and that's not the issue. He's fleshing it out there. We don't need the transcript, which is incredibly prejudicial. This wasn't a problem in Solario because they had the CS on the stand. They were able to ask him questions and cross-examine him, and they had impeachment information on him. So that's why those cases are not analogous, and here we definitely have plain error because the confidential source said exactly what the government was trying to prove at trial, which was that Rodriguez was protecting the drugs. No other witness offered any type of evidence like this against Rodriguez, and the fact that it's being used again in rebuttal closing to bolster the government witness on a contested issue about what he did or did not see and whether or not Rodriguez was involved in the conspiracy means that everything that happened after the transcript was admitted simply increased the amount of prejudice that Rodriguez experienced in this case. That's why it's plain error. In the transcript, the CS is talking directly to the jury. He's not just doing what Guerra is doing. He's going further, and this is stronger than the actual testimony. This isn't like Solario where the drug dealer was caught red-handed in the middle of a bust. This is a weak, circumstantial case where the government had very little evidence to prove Rodriguez's knowledge or intent or his participation in the conspiracy, and these statements are very strong evidence that Rodriguez was involved in this case. What about all of the cell phone traffic between Rodriguez and Guerra or the passenger? Between Rodriguez and his nephew, the government makes a big deal of that at trial, but the fact is, under Jackson, we have to consider all of the evidence and determine if that proves every element of the claim against him, and that evidence doesn't add up to knowledge. That fact, the fact that he's talking to his nephew, the fact that he's in prim, he's following him, and he accelerates on the highway doesn't prove knowledge, and so that's why... Well, the flight does have a suspicious element, doesn't it? It does, but I don't think it proves knowledge necessarily, and the key fact to remember on the flight is once the undercover officer turned on his lights, Rodriguez didn't speed up. He slowed down and he pulled over. Two miles later. It is, but I think you have to keep in mind that that's a very busy freeway that's going about 70 miles an hour. There's not a huge shoulder, so it's not unreasonable that it would have taken him that amount of time to pull over and slow down. So in this case, those actions don't add up to knowledge. They don't show that he agreed to further that conspiracy. I think the most analogous case as far as the CS statements go, I just want to hit on this real quickly before I sit down, is I think the court should look to Ocampo in this case because in that case, officer testimony about facts learned from a witness were testimonial and violated Crawford, and here we have such a worse case because we've got CS statements to an officer that are admitted on a physical transcript that are extremely prejudicial and amount to plain error. If Your Honors have no more questions at this time, I'll reserve the remainder for rebuttal. Thank you, counsel. Thank you. Good morning. May it please the Court. Good morning, counsel. I'm Elizabeth Olsen-White for the United States. The transcript, Officer Guerra, the undercover agent throughout this entire operation, was wearing a body mic, and so the entire transaction from the time before the lead bad guy came to make the deal with the undercover through this turn into the Buffalo Bills parking lot onto the freeway and up to the arrest was recorded. That mic picked up certain statements that the CS made, and the entire transcript of that recording was introduced into evidence. There were a couple of points on examination and on cross-examination. There were a couple of key elements of that transcript that were discussed, specifically about the moment when the undercover officer saw the defendant in the Buffalo Bills parking lot with his window rolled down looking at the undercover officer intently and looking at the other two officers as well, and that that portion when the undercover officer reported to the lead agent, there's another, I think there's another truck involved, it's a black Toyota Tundra, it's a Hispanic male with a mustache, and he read the license plate number, that information. That was... And he said the guy in the black truck owns the drugs, I think. No, actually, that was later on in that transcript, at another portion of that transcript, which was not discussed at the trial, which there was no testimony about whatsoever. There's one point... But it was introduced into evidence. Yes, yes. It said that the guy in the black truck owns the drugs, and then he said the black truck has drugs in it, too. No, I think the point that the comment on page 176 of the excerpt of record that the defendant emphasized in their opening brief was one statement where the CS says, I think that the owner of the work is the one in the black truck. Now, as I say, this was in the transcript. There was no testimony about it. It was not emphasized. There was no definition of what work is. Now, if the government was introducing that statement for the purpose of establishing the truth of the matter asserted, you would think at the very least we would have one of our experts say that work means drugs, that frequently in the drug trade they call, I mean, if this is even true, that they call the drugs the work. There was no testimony about this, no emphasis about this. And was it objected to at trial? There was no objection to the admission of the transcript, and there was no discussion whatsoever about that line of text. And when the prosecutor offered the complete transcript into evidence, the judge asked defense counsel if there was any objection, and defense counsel said no. So that, again, puts us into the plain error standard here. And I guess the key point that I would make is that what Crawford says is that the Confrontation Clause does not bar the use of statements that are introduced for purposes other of establishing the truth of the matter asserted. There's nothing that the CS, there's not a single line in here that was introduced for the purpose of establishing the truth. There is a point, yes, in the transcript where the CS says, is there a black truck back there too? No, right? Now, that line, was he talking about the defendant's black truck? There isn't a timeline on this transcript, so we're not exactly sure when these various statements are made. But even assuming he was talking about the defendant's truck, the undercover officer who was in the car testified. He testified that he observed the black truck with his own eyes, that he saw the defendant with his own eyes, that the defendant was staring at him intently. Numerous officers testified that the defendant's black Toyota Tundra got in line with the other cars in the convoy as they pulled out onto the highway. And numerous officers testified that when the highway patrol pulled over the other two vehicles, the defendant tore off at speeds exceeding 90 miles an hour, and that he continued to drive. Now, it's true, once the officers caught up with him after several miles of racing to catch up with him as he's driving over 90 miles an hour, and they put on their lights and sirens, yes, he didn't speed up more. He was going more than 90 miles an hour, and he didn't stop for two miles. And the officers actually testified that that was unusual, that usually, first of all, usually when the marked highway patrol were pulling over the other two cars, usually when there's a marked highway patrol on the highway, people slow down. And in this case, the defendant goes tearing off at more than 90 miles an hour, and one of the officers who followed and eventually stopped him said, you know, usually when you put on your sirens and your lights, the person slows down pretty fast. He went, he went, he did not stop for another two miles. So all of this. But going back to these statements of the CS, I mean, there are, if the jury didn't have this line in the 38-page transcript where the confidential source says, is there a black truck there too, it wouldn't have made any difference because the undercover officer testified at length about the defendant's truck. The other officers testified at length about the defendant's truck. There's nothing about this line. First of all, Crawford doesn't even apply because it wasn't offered for the truth, to establish the truth of the matter asserted. And second of all, because there was no objection and because it can't possibly make a difference in the light of the testimony that was offered, the defendant simply cannot establish plain error. I'd like to ask you about the enhancement for perjury that occurred during sentencing. Yes. Can you address that, please? Yes. And the government does concede that that was error. I mean, the law is clear that when a judge is going to impose that two-level enhancement for obstruction of justice based on perjured testimony, the court needs to make certain findings. They need to find that the statement was material. I mean, that the defendant, they need to find the evidence. So you concede that they didn't make the findings that are required? Right, that Judge Mahan did not make those findings. Wouldn't it have to be remanded for on that issue? No. I don't – in this case, I don't think it would be. And there's what the – This is a 70-year-old man who didn't do anything for the past 30 years. He's getting a 20-year sentence, which is like a life sentence. Don't think we could at least remand that point? I will say, Judge Mahan, just two points on that. Judge Mahan did give him a sentence that was approximately 100 months lower than the guideline range, you know, based on this. It doesn't really much matter, does it? Well, I mean – When you give somebody some of the sentences we see, you know, three life sentences consecutive or two or 150 years or 170. In this case, there was – to address the specific question about whether a remand is necessary because the judge didn't make findings on this perjury enhancement, the findings that a judge has to make is that the defendant gave false testimony, that the testimony was on a material matter, and that the defendant had willful intent. And the reason the Supreme Court said the district court has to make those findings specifically is because what they say is that – and this is in Dunnegan – that not every accused who testifies at trial and is convicted will incur this enhanced sentence because, for example, an accused might give inaccurate testimony due to confusion. You have to identify the testimony that was inaccurate. Exactly. And in this case, what the defendant testified under oath was that he had no knowledge of the drugs or the conspiracy. The judge didn't go through the three-part test, though. He did not. Right. And so it wasn't clear what the basis for the false testimony, is that correct? That's true. The defendant said a whole lot of things. But one of the things that the defendant said is that he had no knowledge of the drugs or the conspiracy. I have no question that you could show satisfactorily that he committed perjury. The question is whether the judge identified what it was that he did. Exactly. Yes. And that is true. But what I'm saying is what this Court said in Jimenez-Ortega is that you had to remand back for the judge to make those findings, and they noted that they weren't going to consider harmless error because the government had not argued that the error was harmless. Here, I am arguing that the error was harmless. Sending this back to Judge Mahan for him to make the specific finding that the defendant's claim that he knew nothing about the drugs and nothing about the conspiracy was willfully false rather than the result of confusion or mistake would be an empty exercise. Well, play this out. Let's just say that the judge says there is no finding that it's willfully false. What would happen? How would it affect your sentence? You're saying it's a two-level enhancement for perjury? There was a two-level enhancement. Okay. And you said the judge departed or either departed or... Yeah, the judge went down about 100 months based on the lack of criminal history. So beyond whatever the two-level enhancement would have provided. Yes. Yes. I think, I mean, in this case, the question, there is no question that it is in the transcript. The defendant said under oath that he was not involved in this. He knew nothing about the drugs. He knew nothing about the conspiracy. The jury rejected that. The jury found that, in fact, he did know about the drugs. He was involved in the conspiracy. And so the question, and Judge Mahan implied the perjury enhancement. So the question is to send it back to get Mahan, to get the judge to say on the record that, in fact, the statement, I did not know anything about the drugs or the conspiracy was false and willfully false on a material matter, I think is just an empty exercise. But that's the charge. I mean, it's conspiracy. That's what the jury... Right. And he was convicted of it. So anytime somebody goes up and says, I didn't commit, I guess, anytime a defendant would testify and say, I didn't commit the robbery, I didn't commit the murder, and he's found guilty of murder or robbery... That's perjury. ...he would get the enhancement. Yes. I mean, I think the thing is, is that if, for example, the perjury, that the government had sought a perjury enhancement based on this sort of ambiguous, you know, he didn't, he actually didn't admit that he had been in the Buffalo Bills parking lot until he was confronted with the videotape of him leaving. And then he said, oh, yeah, I went from this gas station to the Buffalo Bills and then onto the freeway. And the defense makes the point. There are different ways that you can interpret his testimony on that point. I think that the inference that the government asked the jury to make was a perfectly legitimate inference for the government to ask the jury to draw. But if it was something like that, where there was some ambiguity about maybe he was confused, maybe he was mistaken, maybe he didn't really mean to lie, he was just, you know, he was just explaining it differently, that that's why you need the judge to make a specific finding in a case like that, where they have to find that it wasn't just confusion or mistake, it was actually a willful false statement. But where the statement at issue is the defendant saying, I didn't commit this crime, I didn't know about these drugs, I didn't know about this conspiracy, and the jury says, yes, you did, then that is a willfully false statement on a material issue. If I could just switch real briefly to this clothing in the truck. There was a photograph that the government took after the search of the truck that was introduced into evidence, and there was some testimony about it. And apparently the defendant had a shirt and a pair of pants on a hanger, and I believe there was some kind of little dock kit with toiletry items, although we didn't get into that very much. The point that the government made in its closing argument is that the fact that he had clothing in the car is in no way inconsistent with his plan to go to Las Vegas to do this drug deal. I mean, there's nothing that the defendant was claiming over and over that this was exculpatory, and the district court made it specifically held, squarely stated, that it did not find that clothing exculpatory. He said, to me, it's not exculpatory in and of itself. Under the defendant's theory, the government would have to maintain everything they came across because it could turn out later that you might be able to make an argument from it, but I just don't see it as exculpatory. The government did not contest that the clothes were there. It is true that the officers didn't see them. I mean, the officers testified that they didn't see those items. They were looking. They found the loaded semi-automatic handgun with the bullet in the chamber and the hammer pulled back. They found the extended magazines for the gun. They weren't focused on whether there was a pair of pants on a hanger somewhere in the back. Now, afterwards, in the ñ when the photograph was taken, this stuff was in sort of on the passenger side on the floor. This was after they'd gone through and done the search. And so there was a point in the government's closing where the government made the point that those clothes weren't there when the defendant was stopped. But if you read that segment of the closing argument, the point that the government was making wasn't that those clothes didn't exist. We said, hey, we're the ones who took the picture. You know, the clothes are there, and this case isn't about these clothes. The point that the government was making was that when Officer Zizek approached the defendant's vehicle and heard the thud of something slamming against the passenger side door, when the defendant, we believe, was kind of tossing the gun to the side, and the officer went back to investigate and see what that was, at that time the gun was there on the passenger side floor, and there was nothing else on the passenger side floor. So the point, if you read that section of the closing argument, the point that the government was making had nothing to do with the clothing. It was just simply that when Zizek went back, when Officer Zizek went back to find out what that sound was, and he saw the gun on the passenger side floor, that's all that was there, and that's all that that sound could have been. Unless the Court has something. Thank you. Your Honors, I'd just like to discuss sentencing real quick. The government concedes that there was an error here, and nothing in the record shows that Rodriguez would get the identical sentence here. In Munoz-Camarena, this Court held that even though the District Court judge said he was going to give the defendant the exact same sentence, it still needed to be remanded for resentencing. And so only the District Court can make this finding, and this error was not harmless. As far as the Brady claim goes, there was a Brady violation here because the government told us that this evidence was important and that it was exculpatory. We know that from Cadogan and from Chittum, and we know from the complaint where the government said he wasn't traveling with luggage or any clothing and toiletries. Well, didn't the government really concede that there was clothing in the truck at one time because it had a picture of it, which they gave to the defense? I think that the prosecutor concedes what's self-evident from the photograph, if you read that part of the testimony or of the closing. He doesn't say, though, that there was clothing in there and it was recovered that night, which is what Rodriguez needs to prove up his defense. The government did have that information, and it was bad faith for them to suppress it, it was bad faith for them to open on it, and it was bad faith for them to use its absence to show that Rodriguez was lying. As far as the Crawford claim goes, Rodriguez couldn't confront the informant who was telling the jury exactly what the government was trying to prove, which was that Rodriguez was protecting the drugs. That is, for the truth of the matter, asserted. That's what the government's trying to prove here. The tab on the transcript that the jury had in the back room, which indicated where it was reading from, was on page 168. We've got statements that Rodriguez was involved on 169, on 170, that the work was divided, referring, I hope, to the drugs, because I'm not sure what else would have been divided up here. And then on 172, he again says that the black truck was divided, that he's the owner of the work on 176, that the black truck is coming to on 179, and that he's protecting the work on 180. That's all within about ten pages of where the jury had the tab, and so we have to assume that they read it here. What about the point that there was no objection to the evidence? Pertaining to the Rule 29 motion? No. I'm sorry. Oh, the lack of objection. Yeah. It's unfortunate that there wasn't an objection here, but this should have been a red flag for the district court, and it should have stopped the transcript from coming in before it became an issue. And so that's why it's plain error here. Confidential source statements to an officer should not be coming in on this transcript, and that's why we request at a minimum vacation of the convictions, remand for a new trial, or reorder for resentencing. Thank you very much. Thank you, Kass. The case discharged will be submitted.
judges: Goodwin, Reinhardt, Murguia